Argued at Pendleton October 31; affirmed December 12, 1933

## SMITH ET AL. *v.* SKINNER ET AL.

(27 P. (2d) 895)

*P. J. Gallagher,* of Portland (Gallagher & Gallagher, of Portland, on the brief), for appellants.

*Robert E. Lees,* of Ontario, for respondents.

KELLY, J. Mrs. Emery Smith, who is the mother of her coplaintiff, Mr. Robert E. Smith, at all times herein mentioned, has been the owner of a herd of approximately 40 head of Jersey cattle which were at that time subject to an interest claimed therein by her said son by reason of advances for freight. Mr. Smith testified that during the first part of the year 1926, this herd was located about a mile and a half from Myrtle Creek in the southern part of Oregon.

Sometime in April, 1926, one George ·J. Dickson took personal charge of certain premises in Malheur

county known as the Skinner ranch. The management and control of that ranch had then been turned over by the defendants, Skinner, to the Lumbermen's Securities Corporation of which plaintiff, Robert E. Smith, was the president. Mr. Dickson was in the employ of the Securities Corporation.

In June, 1926, at the instance of plaintiff, Robert E. Smith, the cattle in suit were taken to the Skinner ranch where they have remained except while pastured on the Summerville place by defendants Skinner.

In 1930, Mr. Dickson left the Skinner ranch and Mr. Stuart Fagan then supervised and operated the ranch through defendant S. K. Skinner as foreman. Mr. Fagan terminated his supervision of the ranch about February, 1931, and for a few weeks, one Mr. Kretschmer was in charge. In the spring of 1931, a Mr. Oakes was appointed receiver of the ranch. There is evidence to the effect that the receiver said he would have nothing to do with the cattle in suit. While Mr. Fagan had supervision of the ranch for the Securities Corporation, checks for cream from the cattle in suit were turned over to defendant, W. S. Skinner, under an arrangement theretofore made by Dickson.

During the crop years of 1931, defendants, Skinner, were in possession of the ranch as tenants under an agreement with the receiver. The liens sought to be foreclosed by defendants, Skinner, were for feeding and pasturing 425 cows, 10 steers and calves, being the herd mentioned during said crop years.

It is urged by plaintiffs that there is no evidence in the record to support the finding of the trial court to the effect that the care and feed for said cattle were furnished by defendants at the request of the owner or lawful possessor of said cattle.

As stated, the arrangement concerning cream checks from said herd, which had been made by Dickson, was projected into the period of Fagan's supervision of the Skinner ranch. Moreover, Mr. Dickson testified as follows:

"Q. Now, when Mr. Smith talked with you and made this arrangement with you regarding the Jersey cattle, was there anything said at that time as to whom they were held for?

A. Well I understood that it was Mr. Smith's mother that owned the cattle at Myrtle Point.

Q. Did Mr. Smith inform you at that time that you were actually looking after those cattle for the Lumbermen's Securities Company?

A. No, I understood it was Mr. Smith's cattle.

Q. Did you understand there was any connection between the Securities cattle and the Smith cattle?

A. No I didn't.

  *   *   *   *   *

Q. State whether or not sometime in the month of December 1931, Kirt Skinner, (one of the defendants) came to see you in Caldwell with regard to these cattle?

A. Yes, I remember.

Q. And what was the substance of that conversation at that time?

A. Well, that he hadn't enough hay to carry him through and wondered what you were going to do, and I advised him not to let them die, feed them.

Q. Did Mr. Smith, either by a written communication or by word of mouth ever terminate the agreement under which these cattle were surrendered to you?

A. No, I never heard from Mr. Smith since I left."

Plaintiff, Robert E. Smith, testified that in the spring of 1931, after Mr. Skinner, one of the defendants, had called him upon the phone to make some kind

of arrangement for taking care of these Jerseys, he, Smith, checked the matter up and was informed that a receiver was looking after the cattle.

Mr. S. K. Skinner testified that in the conversation last mentioned he told Mr. Smith that the cattle had to have hay right away, they were in bad shape and had to have hay; that during the summer of 1931, W. S. Skinner, one of the lien claimants, wrote plaintiff, Robert E. Smith twice to find out what to do with the cattle, but received no answer. Smith testified that he did not receive these letters.

From these excerpts of testimony, it is deducible that when the cattle were first brought to the Skinner ranch, Smith authorized Dickson to arrange for their care and feed; that as between Smith and Dickson personally this authority was not terminated; that Smith understood that a request for the care and feed of said cattle had been acted upon by a receiver of the Skinner ranch; while in point of fact the request was made, not of the receiver, but of defendants Skinner.

It does not appeal to us as a reasonable deduction that after the premises had been leased by the receiver to defendants, Skinner, the mere belief by Smith that his agent had asked the receiver, rather than the said defendants, to care for the cattle would be sufficient to support plaintiff's contention that the agent had no authority to make a request of defendants, Skinner, for such feed and care.

Taking a position most favorable to the lien claimants, it could be held that the letters which one of them sent to Smith were received by Smith and that, by failing to direct any other disposition of the cattle, Smith impliedly requested claimants to feed and care for the cattle.

We realize that the testimony is contradictory and that plaintiffs' contention finds support in various parts of it; but the learned trial judge had the advantage of seeing and hearing the witnesses and we do not feel justified in modifying his findings.

The decree of the circuit court is affirmed.

CAMPBELL and BAILEY, JJ., not sitting.